MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT’S MOTION TO DISMISS (Document No. IS)
 

 NEIMAN, United States Magistrate Judge.
 

 This is an action against a member of the Massachusetts State Police alleging misconduct. Plaintiffs — Lecrenski Bros., Inc., David Lecrenski and Dana Lecren-ski — claim that Trooper Ronald Johnson (“Defendant”) violated their civil rights and discriminated against them in violation of both federal and state law. Defendant has filed a motion to dismiss pursuant to Rule 12(b)(6) and a hearing was held on March 4, 2004. For the reasons which follow, the court will allow Defendant’s motion, but in part only.
 

 The facts as alleged in the complaint are well known to the parties and will not be fully restated here. In summary, Plaintiffs claim that Defendant, acting under color of state law, deliberately and systematically made it difficult for them to operate their school bus service business, resulting, among other things, in the non-renewal of at least one bus contract. Defendant’s alleged campaign against Plaintiffs was grounded in their having hired a number of employees of Russian heritage. This led Plaintiffs to file a four-count complaint, three of which concern Defendant: civil rights violations under 42 U.S.C. § 1983 (“section 1983”) (Count I); civil rights violations under the Massachusetts Civil Rights Act (“MCRA”) and Mass. Gen. L. ch. 93, § 102 (Count II); and employment discrimination under section 4 of Mass. Gen. L. ch. 151B (“chapter 151B”) (Count IV).
 
 [1]
 

 In due course, Defendant filed the instant Rule 12(b)(6) motion to dismiss. Defendant’s motion asserts that Plaintiffs not only lack standing for a few of the claims, but that the complaint, as a whole, fails to state claims upon which relief may be granted.
 

 I.
 
 Standard of Review
 

 Dismissal is warranted under Rule 12(b)(6) where there is a “failure to state a
 
 *CLXII
 
 claim upon which relief can be granted.” Fed.R.Civ.P. 12(b)(6);
 
 see Wagner v. Devine,
 
 122 F.3d 53, 55 (1st Cir.1997). In analyzing such a motion, the court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiffs.
 
 See Albright v. Oliver,
 
 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). At bottom, a cause of action may be dismissed if the plaintiffs cannot prove, beyond a doubt, that facts supporting the claim entitle them to relief.
 
 See Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957);
 
 Roeder v. Alpha Indus., Inc.,
 
 814 F.2d 22, 25 (1st Cir.1987).
 
 [2]
 

 II.
 
 Discussion
 

 For the reasons which follow, the court will allow Defendant’s motion insofar as Count I of the complaint relies on the Massachusetts Constitution and insofar as Count II attempts to state a claim under Mass. Gen. L. ch. 93, § 102. The court will also allow the motion as to the entirety of Count IV, the employment discrimination claim. In all other respects, the motion will be denied.
 

 A.
 
 Count I
 

 As a threshold matter, Defendant seeks to dismiss so much of Count I, the section 1983 claim, which seeks relief for violations of rights under the Massachusetts Constitution. As the parties are well aware, section 1983 provides a remedy “against all forms of official violation of
 
 federally
 
 protected rights.”
 
 Monell v. New York City Dep’t of Social Servs.,
 
 436 U.S. 658, 700-01, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (emphasis added). It does not provide a remedy for a violation of a right based on a
 
 state
 
 constitution.
 
 See Pesce v. J. Sterling Morton High Sch.,
 
 830 F.2d 789, 795 (7th Cir.1987);
 
 Magnuson v. Cassarella,
 
 812 F.Supp. 824, 830 n. 5 (N.D.Ill.1992). Accordingly, without opposition from Plaintiffs, Defendant’s motion will be allowed in this respect.
 

 With regard to the remainder of Count I, Defendant argues that, at best, Plaintiffs’ claim concerns the loss of a private contract and that such loss does not have the magnitude of a federally protected right. Moreover, Defendant argues, even if the complaint is construed to allege a violation of procedural due process, it was one of the school districts for which Plaintiffs operated, not Defendant, which made the decision not to renew Plaintiffs’ bus contract.
 

 Defendant’s argument to the contrary, the court believes that, for purposes of Rule 12(b)(6), Plaintiffs have adequately pled a claim in Count I for violations of them federal constitutional rights. For example, Plaintiffs allege that Defendant’s actions “were performed willfully and knowingly and were motivated by his prejudice against Russian immigrants, and as a result thereof, the Plaintiffs have suffered economic and other damages,
 
 and have been denied their Constitutional rights to employ persons regardless of their race or national origin.
 
 ” (Complaint ¶ 15 (emphasis added). See also Complaint ¶ 20 (“As a direct and proximate
 
 *CLXIII
 
 result of the false accusations of [Defendant] made under color of law, the plaintiffs were deprived of rights guaranteed by the Constitution of the United States ... and have incurred economic damages.”).) To be sure, Plaintiffs will have to articulate those rights much more precisely as the litigation unfolds. For the moment, however, under the authority of
 
 Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
 
 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (describing liberal notice pleading standards for section 1983 claims), the court deems Plaintiffs’ section 1983 allegations to be sufficient. As a result, except for the alleged claim under the Massachusetts Constitution, the court will deny Defendant’s motion with respect to Count I.
 

 B.
 
 Count II
 

 Preliminarily, the court will dismiss, on standing grounds, that part of Count II which alleges a violation of Mass. Gen. L. ch. 93, § 102, the state statute guaranteeing “[a]ll persons within the commonwealth, regardless of sex, race, color, creed or national origin, ... the same rights enjoyed by white male citizens, to make and enforce contracts .... ” Plaintiffs’ argument to the contrary, they have not alleged that Defendant discriminated against
 
 them
 
 on the basis of
 
 their
 
 race or national origin. Rather, they contend that Defendant’s discrimination against their Russian drivers indirectly caused them harm. “Such an allegation can hardly amount to ‘discrimination in the enforcement’ of the plaintiffs’ contracts ... or a denial of the same contractual benefits enjoyed by white male [citizens].”
 
 Harvard Law Sch. Coalition for Civil Rights v. Pres. & Fellows of Harvard Coll.,
 
 413 Mass. 66, 595 N.E.2d 316, 319 (1992).
 
 See also Ellis v. Safety Ins. Co.,
 
 41 Mass.App.Ct. 630, 672 N.E.2d 979, 987 (1996) (similar).
 

 Nonetheless, the court concludes that Plaintiffs have adequately alleged a claim in Count II under the MCRA. To establish an MCRA claim, a plaintiff must prove that his or her exercise or enjoyment of rights secured by the constitution or laws of either the United States or Massachusetts has been interfered with by threats, intimidation or coercion.
 
 See
 
 Mass. Gen. L. ch. 12, §§ 11H and 111.
 
 [3]
 
 While the MCRA is the state “counterpart” to section 1983 and is basically “coextensive with” the federal statute,
 
 see Chilson v. Polo Ralph Lauren Retail Corp.,
 
 11 F.Supp.2d 153, 158 (D.Mass.1998);
 
 Batchelder v. Allied Stores Corp.,
 
 393 Mass. 819, 473 N.E.2d 1128, 1130-31 (1985), there are some differences. For example, to succeed on an MCRA claim, a
 
 *CLXIV
 
 plaintiff must show that the derogation of rights occurred “by threats, intimidation or coercion.”
 
 Bally v. Northeastern Univ.,
 
 403 Mass. 713, 532 N.E.2d 49, 52 (1989). Here, Defendant argues, Plaintiffs have not sufficiently alleged such “threats, intimidation, or coercion.”
 

 In order for “threats, intimidation, or coercion” to be established, the Supreme Judicial Court normally requires “a showing of an ‘actual or potential physical confrontation accompanied by a threat of harm.’ ”
 
 Carvalho v. Town of Westport,
 
 140 F.Supp.2d 95, 101 (D.Mass.2001) (quoting
 
 Planned Parenthood League of Mass., Inc. v. Blake,
 
 417 Mass. 467, 631 N.E.2d 985, 989 n. 8 (1994)). However, as the SJC more recently explained, “coercion” under the MCRA is “not limited ... to actual or attempted physical force.”
 
 Buster v. George W. Moore, Inc.,
 
 438 Mass. 635, 783 N.E.2d 399, 410 (2003). Rather, “in certain circumstances, economic coercion, standing alone, may be actionable under the act.”
 
 Id.
 
 at 411.
 
 See also id.
 
 at 410 (“For example, we have suggested that coercion may be found where one party deprives another of rights due under a contract.”).
 

 Economic coercion, at the very least, can be implied in the instant complaint. (See, e.g., Complaint ¶¶ 15 and 20 (quoted above). See also
 
 id.
 
 ¶ 11 (“As a result of the false accusations brought by [Defendant], Leerenski Brothers, Inc. lost a contract .... ”).) There also might exist instances of actual or attempted physical force. (See, e.g.,
 
 id.
 
 ¶ 23 (“As a ... result of [Defendant’s] actions ..., [Plaintiffs were subjected to retaliatory treatment, intimidation, threats and coercion for the purpose of discouraging them from hiring and retaining employees who were recent immigrants from the former Soviet Union.”).) Thus, for essentially the same notice pleading reasons this court applied to the section 1983 cause of action, the court deems the MCRA claim in Count II sufficiently pled.
 
 See Leatherman,
 
 507 U.S. at 169, 113 S.Ct. 1160; Fed.R.Civ.P. 8(a) (pleading need only set forth “a short and plain statement of the claim showing that the pleader is entitled to relief’).
 
 Cf. Karetnikova v. Trustees of Emerson College,
 
 725 F.Supp. 73, 77-78 (D.Mass.1989) (noting that actions which result in “cancellation of a future economic relationship” would appear to be “sufficient to constitute coercion” and, therefore, allowing MCRA claim to survive Rule 8(a)’s liberal pleading hurdle).
 

 To be sure, the court is aware of at least one
 
 pre-Leatherman
 
 decision by the SJC which would appear to place a heightened pleading burden on state MCRA plaintiffs. In
 
 Hobson v. McLean Hosp. Corp.,
 
 402 Mass. 413, 522 N.E.2d 975 (1988), the SJC dismissed an MCRA claim which consisted of “eonelusory allegations, amounting to a summarization of G.L. c. 12, §§ 11H, 111.”
 
 Id.
 
 at 978. Also there, “[t]he plaintiff [did] not identify, and [the court could] not discern, what right guaranteed to her by Massachusetts law [was] concerned.”
 
 Id. Hobson
 
 has been applied by both Chief Judge William G. Young,
 
 Canney v. City of Chelsea,
 
 925 F.Supp. 58, 70 (D.Mass.1996) (citing
 
 Hobson
 
 for proposition that “mere recitals of boilerplate claims of ‘threats, intimidation, or coercion’ do not meet the requirements of Massachusetts civil rights pleading”), and, indirectly, by this court in a situation where, unlike here, there was no allegation that the defendant “had any contact whatsoever with Plaintiffs,”
 
 Lorenzo v. Gallant,
 
 2002 WL 31833751, at *5-6 (D.Mass. Oct. 28) (applying
 
 Canney
 
 which, in turn, applied
 
 Hobson)
 
 (rep’t and rec. adopted Dec. 16, 2002).
 

 That being said, this court is not convinced that it should apply
 
 Hobson’s
 
 state-law based heightened pleading standard to
 
 *CLXV
 
 MCRA claims brought in this federal forum. The First Circuit Court of Appeals recently reminded the lower courts that
 
 “Leatherman
 
 ... emphasizes] the general primacy in federal court of Rule 8 (notice pleading) and 9(b) (heightened pleading only for fraud and mistake).”
 
 Andresen v. Diorio,
 
 349 F.3d 8, 17 (1st Cir.2003).
 
 See also Swierkiewicz v. Sorema N.A.,
 
 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). “[U]nder standard
 
 Erie
 
 doctrine,” the court explained, “state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law.”
 
 Andresen,
 
 349 F.3d at 17 (citing,
 
 inter alia, Hanna v. Plumer,
 
 380 U.S. 460, 466-74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)).
 
 [4]
 

 See also Jackson v. East Bay Hosp.,
 
 980 F.Supp. 1341, 1352 (N.D.Cal.1997)
 
 (“Leatherman
 
 holds that a federal court may not apply a state law which requires ‘heightened pleading’ in [state] civil rights cases ....”);
 
 Medley v. Turner,
 
 1993 WL 96112, at *1 (N.D.Ill. Mar.31, 1993) (“Even though the claim at issue is grounded in state law, the standards prescribed by the Rules, rather than state pleading principles, apply.”) (citing
 
 Hanna
 
 and
 
 Leather-
 
 man)l.
 

 In any event, Plaintiffs’ MCRA claim is sufficiently pled under Rule 8(a).
 
 [5]
 
 It may be that Plaintiffs will not ultimately be able to prove what they claim, “but a threshold dismissal is simply not in order.”
 
 Medley,
 
 1993 WL 96112, at *1. Accordingly, except for the alleged claim under Mass. Gen. L. ch. 93, § 102, the court will deny Defendant’s motion with respect to Count II.
 

 C.
 
 Count IV
 

 Finally, the court agrees with Defendant that Plaintiffs lack standing to pursue Count IV, Plaintiffs’ chapter 151B cause of action. According to the SJC, the “central focus” of section 4 of chapter 151B, which is included within the statutes governing labor and industries, is to protect
 
 employees
 
 from
 
 employers’
 
 discriminatory employment practices:
 

 The authority to bring an action for a statutory violation is determined with reference to the context, subject matter, and area of concern of the statute. General Laws c. 151B, § 4, prohibits employers from engaging in discriminatory employment practices against certain protected classes. Chapter 151B, § 4(1) seeks the removal of artificial, arbitrary, and unnecessary barriers to full participation in the workplace. Section 9 of G.L. c. 151B, grants to “[a]ny person claiming to be aggrieved” by such a
 
 *CLXVI
 
 discriminatory practice standing to bring a civil action for damages or in-junctive relief or both.
 
 The central focus of inquiry is whether the employer penalizes some employees or prospective employees because of their race, color, religion, sex, or national origin.
 
 Although the Commonwealth’s employment discrimination law, G.L. c. 151B, affects a broad array of employment practices we will not assume that the Legislature intended to cover relationships outside the traditional common law employer-employee relationship. To qualify as a “person aggrieved,” a person must allege substantial injury as the direct result of the action complained of.
 
 It is clear from the statute and case law that an individual has to be within the employment relationship and has to have suffered injury as a result of a prohibited practice in order to have a cause of action under § 9.
 

 Harvard Law Sch. Coalition,
 
 595 N.E.2d at 318 (citations, footnote and further internal quotation marks omitted; emphasis added).
 
 See also Cariglia v. Hertz Equip. Rental Corp.,
 
 363 F.3d 77, 83 (1st Cir.2004) (noting SJC’s “instruction that the ‘primary purposes’ of Mass. Gen. L. ch. 151B § 4 ‘are to protect citizens of the Commonwealth from adverse employment decisions ... and to discourage, and punish unlawful discrimination in the work place.’ ”) (quoting
 
 Knight v. Avon Prods., Inc.,
 
 438 Mass. 413, 780 N.E.2d 1255, 1264 (2003)). As Defendant points out, he is not being sued within the context of an employment relationship.
 

 To be sure, Plaintiffs emphasize the language in subsection 4A which prohibits
 
 “any person
 
 to coerce, intimidate, threaten or interfere with
 
 another person
 
 in the exercise or enjoyment of any right granted or protected by this chapter .... ” Mass. Gen. L. ch. 151B, § 4(4A) (emphasis added). Similarly, subsection 5 bars
 
 “any person, whether an employer or employee or not,
 
 to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the chapter or to attempt to do so.”
 
 Id.,
 
 § 4(5) (emphasis added). Nonetheless, neither subsection has been interpreted by Massachusetts courts to extend standing to the
 
 employer
 
 of the aggrieved party.
 

 Subsection 4A has consistently been construed as prohibiting interference with, or retaliation against, an aggrieved employee who pursues relief through the Massachusetts Commission Against Discrimination (“MCAD”), even though the provision never uses the word “retaliation.”
 
 See, e.g., Sahli v. Bull HN Info. Sys., Inc.,
 
 437 Mass. 696, 774 N.E.2d 1085, 1089 (2002);
 
 Pontremoli v. Spaulding Rehab. Hosp.,
 
 51 Mass.App.Ct. 622, 747 N.E.2d 1261, 1264 (2001) (citing
 
 Bain v. Springfield,
 
 424 Mass. 758, 678 N.E.2d 155, 160 (1997)).
 
 See also Blockel v. J.C. Penney Co.,
 
 337 F.3d 17, 27 (1st Cir.2003). While the perpetrator does not have to be the employer (and could instead be a third party), there is no evidence that the statute was intended to provide standing to those, like Plaintiffs here, who employ the aggrieved employee.
 
 [6]
 

 Likewise, subsection 5 has principally been invoked by employees against coworkers or supervisors who, while not the actual employer of the aggrieved party, took part in or abetted discriminatory acts.
 
 See Chapin v. Univ. of Mass.,
 
 977 F.Supp. 72, 78 (D.Mass.1997) (holding that non-
 
 *CLXVII
 
 action of a supervisor who is aware of sexual harassment is aiding and abetting in violation of subsection 5);
 
 Morehouse v. Berkshire Gas Co.,
 
 989 F.Supp. 54,61 (D.Mass.1997) (co-workers could be sued individually under subsections 4A and 5 for harassing female employee).
 
 Cf. Ligenza v. Genesis Health Ventures of Mass., Inc.,
 
 995 F.Supp. 226, 233 (D.Mass.1998) (supervisors not liable under subsection 5 for aiding and abetting discrimination that did not occur). Once again, however, Plaintiffs are not such “aggrieved” parties here.
 

 In short, the court is unwilling to stretch chapter 151B in the manner Plaintiffs seek, particularly in a way so far removed from the established employment discrimination focus of the statute.
 
 See Martel v. Stafford,
 
 992 F.2d 1244, 1247 (1st Cir.1993) (cautioning plaintiffs who choose a federal forum to “not expect the federal court to steer state law into unprecedented configurations”) (citations omitted). The court has not been provided — nor has it found any — case law where the statutory provisions upon which Plaintiffs rely have been extended to provide standing to the employers of parties affected by the discrimination of a third party. Accordingly, the court will dismiss Count IV.
 

 III.
 
 Conclusion
 

 For the reasons stated, Defendant’s motion is ALLOWED with regard to Count IV, so much of Count I that seeks to pursue a 1983 claim via the Massachusetts Constitution, and so much of Count II that seeks to state a claim under Mass. Gen. L. ch. 93, § 102. In all other respects, Defendant’s motion is DENIED.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Count III was targeted solely at a co-defendant — the Commonwealth of Massachusetts, acting by and through its Department of Pub-lie Safety — but Plaintiffs voluntarily dismissed that cause of action.
 

 [2]
 

 . Although Defendant’s "standing” argument might conceivably fall under the rubric of Rule 12(b)(1), which concerns subject matter jurisdiction, the court will follow the parties’ lead and analyze the entire motion, including the standing argument, as arising under Rule 12(b)(6).
 
 See United States v. AVX Corp.,
 
 962 F.2d 108, 114 n. 6 (1st Cir.1992) (considering standing argument pursuant to Rule 12(b)(6), as parties did, but recognizing "that Rule 12(b)(1) arguably provides a closer analogy”).
 
 See also McInnis-Misenor v. Me. Med. Ctr.,
 
 319 F.3d 63, 67 (1st Cir.2003) (evaluating defendant's standing argument pursuant to Rule 12(b)(6)).
 

 [3]
 

 . In pertinent part, sections 11H and 111 state as follows:
 

 [11H:] Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation, or coercion, with the exercise and enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured.
 

 [1II:] Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to interfere with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages.
 

 [4]
 

 . The First Circuit made these statements in the context of a defamation claim which, under Massachusetts law, must also meet a "heightened pleading standard,” i.e., "the complaint [must] include the precise wording of at least one sentence of the alleged defamatory statements and the means and approximate dates of publication.”
 
 Andresen,
 
 349 F.3d at 16-17 (citations and internal quotation marks omitted). This court once applied those standards as the main justification for recommending dismissal of a defamation claim brought in federal court.
 
 See Kibbe v. Potter,
 
 196 F.Supp.2d 48, 74-75 (D.Mass.2002). In
 
 post-Andresen
 
 hindsight, that application was apparently wrong, but fortunately rectified by District Judge Michael A. Ponsor who affirmed the dismissal on an entirely different ground.
 
 See id.
 
 at 53.
 

 [5]
 

 . In the court’s view, the MCRA claim would also survive, albeit barely, under
 
 Hobson’s
 
 heightened pleading standard. For one thing, as indicated, the complaint alleges somewhat more than a boilerplate summary of the "threats, intimidation, or coercion” requirement. Moreover, unlike the situation in
 
 Hob-son,
 
 federal constitutional rights (e.g., first amendment or procedural due process rights) can be readily discerned from the complaint's substantive allegations.
 

 [6]
 

 . Granted, the MCAD itself has found a third party, unrelated to the employment relationship, liable for discrimination under subsection 4A.
 
 See Erewa v. Reis,
 
 Docket No. 93-BEM-2249, cited at 26 M.L.W. 1392 (1998). Even there, however, it was the employee who brought the claim, not the employer.